No. 40,752

BORDMAN INVESTMENT COMPANY, a Corporation, *Appellant,* v. WILLIS D. FIELD and PAULINE V. FIELD, and COMMERCE TRUST COMPANY (Intervener), *Appellees.*

(320 P. 2d 862)

Opinion filed January 25, 1958.

*J. Willard Haynes,* of Kansas City, argued the cause, and *W. C. Jones,* of Olathe, was with him on the briefs for the appellant.

*John J. Gardner,* of Olathe, and *James E. Lockwood,* of Kansas City, Missouri, both argued the cause and were on the briefs for appellees, Willis D. Field and Pauline V. Field.

The opinion of the court was delivered by

PARKER, C. J.: Plaintiff, Bordman Investment Company, a corporation licensed under the laws of the State of Missouri to engage in the automobile finance business, commenced an ordinary replevin action against the defendants, Willis D. Field and Pauline V. Field, residents of Johnson County, Kansas, in the district court of Johnson County on March 13, 1956, by filing a petition wherein it alleged, in substance, that it had a special ownership or interest in and was entitled to the immediate possession of a 1956 Buick automobile (describing it) under and by virtue of a chattel mortgage executed and delivered by James Watts, doing business as Watts Motor Company in Kansas City, Missouri (hereinafter referred to as Watts); that at the time of the execution of such mortgage Watts was the owner of such automobile and that that instrument had been filed

of record in the office of the Recorder of Deeds of Jackson County, Missouri, on December 5, 1955, where it had remained of record ever since the filing date, unsatisfied and unreleased of record; that plaintiff was the owner and holder of such mortgage and entitled to all rights thereunder; that the conditions of the mortgage had been broken by Watts who had failed, neglected and refused to pay the amount named in the mortgage, to-wit: $2,950 on demand; that there was then due plaintiff from Watts under the terms of such mortgage, and a note evidencing the indebtedness secured thereby, the sum of $3,000.00; that the automobile described in the mortgage as security for the payment of such debt was then in the possession of defendants who wrongfully detained it and had refused to surrender the same to plaintiff and still refused to do so; and that by reason of the facts stated plaintiff demanded judgment against the defendants for the possession of such automobile and costs of the action.

Defendants' second amended answer and cross-petition, verified by Pauline V. Field, consists of a general denial and additional allegations, designated as a further answer and cross-petition. Since, as will be presently disclosed, the case was submitted solely on plaintiff's right to possession of the automobile no useful purpose would be served by reference to the cross-petition. However, the additional allegations of the answer serve the dual purpose of disclosing defendants' claim with respect to the controversy as well as the trial court's reason for submitting the cause as heretofore indicated and on that account are important. Limited strictly to matters pertaining to possessory rights of the parties such allegations read:

"4. That on December 28, 1955, said defendants negotiated with and purchased from Kansas United Auto Sales, Inc. a certain new automobile described as a 1956 model Buick Hardtop two door Riviera Coupe, Motor No. 14705266, for and in consideration of Three Thousand Ninety-five ($3,095.00) Dollars; that said automobile was delivered to these defendants at the place of James Watts, doing business as Watts Motor Co. in Kansas City, Missouri, Jackson County, so sold and delivered in the usual course of business and a Bill of Sale given to these defendants by Kansas United Auto Sales, Inc. by and through its manager, showing said automobile free from all incumbrances, a true and complete copy of which is hereto attached and marked Exhibit A; that at the time of said sale defendants assigned certificate of title on a 1952 Oldsmobile Motor No. R91630 to Kansas United Auto Sales, Inc. as a trade in on the said Buick automobile and delivered to Kansas United Auto Sales, Inc. a check drawn by Willis D. Field in the amount of Two Thousand Four Hun-

dred Sixty-three ($2,463.00) Dollars, representing Two Thousand Four Hundred Twenty-five ($2,425.00) Dollars on the purchase price of the Buick automobile and Thirty-eight ($38.00) Dollars Kansas Sales Tax, said check being attached hereto and marked Exhibit B. That all negotiations above mentioned were had at the place of business of Watts Motor Co., in Jackson County, Kansas City, Missouri; that the Bill of Sale, Certificate of Title on the said 1952 Oldsmobile and said check in the amount of Two Thousand Four Hundred Sixty-three ($2,463.00) Dollars above mentioned, were all delivered at the place of business of Watts Motor Co. in Jackson County, Kansas City, Missouri.

"5. That on March 13, 1956, said automobile was taken from these defendants without notice or demand by Bordman Investment Co. through this replevin action.

"6. That plaintiff at all times herein mentioned knew that James Watts, doing business as Watts Motor Co., and Kansas United Auto Sales, Inc. were engaged in the business of selling new and used automobiles to the general public; that plaintiff financed automobiles distributed and sold to the general public both through Watts Motor Co. and Kansas United Auto Sales, Inc. Plaintiff further knew at all times herein mentioned that automobiles in the possession of James Watts doing business as Watts Motor Co. or Kansas United Auto Sales, Inc., were being sold to the general public as free and clear of all encumbrances. Plaintiff further had full knowledge of the sale of said Buick automobile to these defendants as is set out above.

"7. That plaintiff knowingly and purposely allowed said automobile to be sold to these defendants as a new automobile free of encumbrances and then purposely and wrongfully brought an action in replevin against these defendants to recover the same.

"8. That by reason of the facts alleged above plaintiff does not have such an interest in said automobile which would allow plaintiff to defeat defendant's claim and that plaintiff is estopped to claim any interest in said automobile; that these defendants are, therefore, entitled to recover said automobile . . ."

After the overruling of its demurrer to the foregoing answer plaintiff filed a long and complicated reply. In a general way it may be stated this pleading, assuming at all times that plaintiff was entitled to possession of the automobile in question by reason of its mortgage from Watts, contains recitals to the effect that under the facts and circumstances set forth in their answer, and others detailed at length in the reply, defendants had failed to comply with the laws of either Missouri or Kansas in purchasing the automobile and had acquired no valid title thereto, hence they had no legal defenses whatsoever which could defeat plaintiff's recovery in the replevin action.

Following the filing of its reply plaintiff's motion for judgment on the pleadings was overruled on the ground such pleadings disclosed issues of fact that must be determined from evidence.

Thereafter, either by permission or order of the court, the Commerce Trust Company, a corporation, intervened in the action and filed an answer to the petition. Nothing would be gained by detailing this pleading. For purposes pertinent to the appellate issues involved it suffices to say such answer contains a general denial of the allegations of plaintiff's petition; asserts that the Fields purchased and obtained possession of the automobile in the manner set forth in their answer; alleges that the Trust Company furnished such defendants the money with which to pay Watts the difference between the trade in value of the old automobile and the new automobile purchased from Watts; discloses that to secure payment of the money so advanced such defendants gave the Commerce Trust Company a chattel mortgage on the new automobile; and prays for judgment confirming title to the new automobile to be in defendants, subject only to the Trust Company's mortgage. Plaintiff's demurrer to the intervener's answer was overruled. Thereupon plaintiff filed a lengthy reply to such answer. For all purposes here important it may be said this pleading contains denials and allegations similar in form and substance to those set forth and relied on by plaintiff in its reply to the defendant's answer.

With issues joined as related the cause came on for trial, at the commencement of which the court, on its own order announced that under authority of *Upton v. Pendry,* 109 Kan. 744, 202 Pac. 73, it was directing that only the portion of the case concerning the plaintiff's right to possession be tried at that time and that any matter having to do with defendants' counterclaim for damages be deferred until the determination of the question of right to possession only. Whereupon, the court having previously indicated the pleadings disclosed issues of fact which must be determined from evidence, a jury was empaneled and sworn to determine such questions.

At the conclusion of opening statements by the defendants, also by the intervener, plaintiff moved for judgment in its favor and against defendants as well as the intervener on the pleadings and opening statements of counsel. When these motions were overruled plaintiff adduced its evidence and rested. Defendants followed with their evidence. Thereupon plaintiff demurred to the defendants evidence on the ground such evidence was insufficient to constitute a defense to the plaintiff's case. This demurrer was overruled and the intervener adduced its evidence, to which plain-

tiff also demurred. When this demurrer was overruled plaintiff adduced rebuttal evidence.

At the close of all the evidence plaintiff moved that the court instruct the jury to return a verdict in favor of plaintiff and against the defendants and the intervener for the possession of the personal property described in its petition and replevin affidavit.

Following the overruling of the motion for a directed verdict the trial court submitted and read to the jury lengthy instructions. Several of these instructions are highly important because of contentions advanced on appeal and should be quoted. They read:

"No. 6. You are instructed that the only issue for your determination in this case is whether or not the plaintiff, Bordman Investment Company, had the right to take possession of the 1956 Buick automobile described in the evidence from the defendants, Willis D. Field and Pauline V. Field, under the writ of replevin which was caused to issue by the plaintiff.

"No. 7. It is admitted in this case that the title to the 1956 Buick automobile in question was in the name of Watts Motor Company at the time of the attempted sale to the defendants, Willis D. Field and Pauline V. Field. It is further admitted that James Watts, d/b/a Watts Motor Company and Kansas United Auto Sales, Inc., were not registered new car dealers, but were engaged in the business of selling both new and used cars to the general public. It is further admitted that the 1956 Buick automobile was a new unused automobile and no certificate of title had ever been issued thereon in any state.

"The Court has determined as a matter of law that Defendants' Exhibit 2, the purported Bill of Sale from Kansas United Auto Sales, Inc., to Pauline V. Field failed to comply with the automobile registration laws of both Kansas and Missouri and that a certificate of title to the car in question could not be issued on the strength of said purported Bill of Sale alone to the defendant, Pauline V. Field.

"You are therefore instructed that as a matter of law the plaintiff has proven its right to possession of the 1956 Buick automobile in question, and that your verdict must be for the plaintiff and against the defendants, Willis D. Field and Pauline V. Field, and the Intervenor, Commerce Trust Company, unless you find that the defendants, Willis D. Field and Pauline V. Field, and the Intervenor, Commerce Trust Company, have proven by a preponderance of the evidence either one or both of the defenses set forth in Instruction 8.

"No. 8. You are instructed in this case the defendants, Field and the Intervenor, Commerce Trust Company, have set up as defenses to plaintiff's claim of right to possession of the automobile in question: (1) That plaintiff is estopped from claiming its right to possession to said automobile under and by virtue of its chattel mortgage as against the defendants, Field; and (2) That said note for which the chattel mortgage on the automobile in question was given as security, has been fully paid by James Watts, d/b/a Watts Motor Company to the plaintiff, Bordman Investment Company.

"These matters are issues of fact and are solely for your determination.

"No. 9. You are instructed that in order for the defendants, Field, and Intervenor, Commerce Trust Company, to defeat the plaintiff's right to possession under the theory of estoppel, that they must prove all of the following facts by a preponderance of the evidence:

"1. That the plaintiff, Bordman Investment Company and its assignor, Community Investment Co., on or about December, 1955, had developed a practice of financing the Watts Motor Company as a dealer in new and used cars under an arrangement by which plaintiff permitted the Watts Motor Company to retain possession of automobiles and sell said automobiles covered by their chattel mortgages to the general public in the regular course of business and deliver possession of said vehicles to purchasers from the place of business of Watts Motor Company, and that said automobiles were sold to purchasers as being free and clear of any encumbrances.

"2. That the plaintiff, Bordman Investment Co., and its assignors, Community Investment Co. permitted automobiles to be sold under the arrangements set forth in paragraph one hereof, in the name of Kansas United Auto Sales, Inc., although said automobiles were actually titled in the name of Watts Motor Co. and said automobiles were delivered to purchasers at the place of business of Watts Motor Company.

"3. That the plaintiff, Bordman Investment Company and its assignor, Community Investment Company, knew that James Watts was President and principal stockholder of Kansas United Auto Sales, Inc., a Kansas corporation, and also that the same James Watts was doing business as Watts Motor Company in Kansas City, Missouri.

"4. That Plaintiff, Bordman Investment Co., and its assignor, Community Investment Company, permitted Watts Motor Company and Kansas United Auto Sales, Inc., to pay off plaintiff's note and chattel mortgage from the proceeds of the sale of said automobiles after delivery of possession of automobiles to purchasers at which time title would be procured for the purchasers from Bordman Investment Co. who held all evidences of title to said automobiles.

"5. That on or about December 28, 1955, defendants, Willis D. Field and Pauline V. Field, purchased the 1956 Buick automobile in question and received possession thereof, and a purported bill of sale from Kansas United Auto Sales, Inc., the transaction being made on the premises of Watts Motor Company.

"6. That defendants, Field, had no actual notice of plaintiff's chattel mortgage on said automobile.

"If you find that all of the above facts have been proven by a preponderance of the evidence then the plaintiff is estopped from claiming the right to possession to said automobile, even though the motor vehicle registration laws of Missouri and Kansas were not complied with and the defendants, Field, were unable to procure a certificate of title to said automobile, and even though you may find and believe that James Watts was in default under his note and chattel mortgage on said automobile to plaintiff, Bordman Investment Company. In such case your verdict should be for the defendants, Willis D. Field and Pauline V. Field, and the Intervenor, Commerce Trust Company.

"On the other hand if you find that all of the above facts have not been proven by a preponderance of the evidence, then you will give no consideration to the defense of estoppel.

"No. 10. As to the defense of payment you are instructed that if you find by a preponderance of the evidence that after the sale and delivery of the 1956 Buick automobile in question to the defendants, Fields, on December 28, 1955, by Kansas United Auto Sales, Inc., and payment of the purchase price therefor, that James Watts delivered to said Bordman Investment Company, sufficient funds to pay off any outstanding balance due plaintiff and directed that the same be applied on the note and mortgage held by plaintiff on the 1956 Buick automobile, then in that event plaintiff would have no right to possession of said motor vehicle and your verdict must be for defendants, Willis D. Field and Pauline V. Field, and the Intervenor, Commerce Trust Company, and that would be true even though said funds were credited to other indebtedness of James Watts, d/b/a Watts Motor Company.

"On the other hand if you do not so find, then you will give no consideration to the defense of payment."

After retiring to the jury room with the instructions and forms of verdict to which no objection is made, the jury, having announced it had reached a decision, returned with a verdict wherein it found for the defendants, Willis D. Field and Pauline V. Field, and the intervener, Commerce Trust Company.

Plaintiff then filed a motion for judgment notwithstanding the verdict and a motion for a new trial. In due course both motions were overruled. Following this action the trial court announced it accepted and approved the verdict. Thereupon it rendered judgment for the defendants and the intervener against the plaintiff for the possession of the automobile, described in the petition and affidavit in replevin, and further confirming title in such automobile to be in the defendants, subject only to the intervener's mortgage.

Plaintiff then perfected the instant appeal and brings the case to this court under numerous specifications of error to be presently considered, discussed and determined.

At the outset the issues will be simplified by disposing of one contention out of the order in which it is presented. It is that the Commerce Trust Company should not have been permitted to intervene in the action as a party defendant. Our statute (G. S. 1949, 60-417) provides and our decisions (*Ely v. Holloway*, 95 Kan. 8, 147 Pac. 1128; *Hoxie State Bank v. Vaughn*, 137 Kan. 648, 651, 21 P. 2d 356) hold that when in an action for the recovery of real or personal property any person having an interest in the property applies to be made a party, the court may order it to be done.

Having established that the Trust Company is a proper party and since, after claiming a lien on the involved automobile, the effect of its answer is to merely reassert and rely on claims made by the defendants Field, we can now dispose collectively of claims of error with respect to rulings of the trial court on challenges made against the pleadings of all parties defendant. These are that the trial court erred in overruling (1) plaintiff's demurrer to the second amended answer and cross-petition of defendants Field; (2) its motion for judgment against such defendants on the pleadings; and (3) its demurrer to the answer of the Trust Company. Without further recital of allegations of the pleadings thus challenged it may be stated that the essence of all contentions advanced with respect to such rulings is based on the premise the allegations of such pleadings were so limited that they failed to state a defense against the cause of action set forth in the petition. We note the answer of defendants Field, verified as the statute (G. S. 1949, 60-731) permits by one of such defendants only, contains a general denial and additional defensive allegations. The verified answer of the intervening defendant contains a similar denial and other allegations describing the nature of its interest in the involved property. Even so, and without regard to the additional allegations mentioned, it can and must be held that such answers were sufficient to constitute a defense to the petition. The long-established rule of this jurisdiction is that under a general denial in a replevin action the defendant may make any defense whatever that will defeat the plaintiff's claim. See *Nausley v. Nausley,* 181 Kan. 543, 313 P. 2d 302, and authorities cited at page 545 of the opinion.

Early in this opinion we pointed out that after the overruling of the foregoing motions the cause came on for trial and that thereupon the court directed that only the portion of the case concerning the plaintiff's right to possession be tried and that all issues respecting such rights would be submitted to a jury for its decision. Although it is not specified as error plaintiff, at least by inference, urges that this action on the part of the trial court was erroneous. All arguments on this point lack merit and cannot be upheld. Long ago in *Upton v. Pendry,* 109 Kan. 744, 202 Pac. 73, rehearing denied in 110 Kan. 191, 203 Pac. 300, we held that in an action in replevin where a defendant's answer sets up an extended counterclaim the trial court in the exercise of its discretion and to expedite the administration of justice may postpone the hearing on all matters

covered by the counterclaim until after the question of plaintiff's right to possession of the goods at the commencement of the action in replevin is determined. Such action on the part of the trial court did not preclude the intervener, as plaintiff contends, from subsequently participating in the trial of the limited issues involved.

Error is assigned in the overruling of plaintiff's motion for judgment against the defendants Field and the intervener on the pleadings and opening statements. So far as the pleadings are concerned this claim has been answered by what has been heretofore said and held respecting the propriety of rulings relating to the sufficiency of such pleadings. Our examination of the opening statements discloses nothing which necessarily and absolutely defeats the defenses, to which we shall presently refer, relied on by defendants as precluding plaintiff's recovery. Under such circumstances this court is committed to the rule that no judgment can be rendered on the pleadings and opening statements. (*Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899; *Rodgers v. Crum,* 168 Kan. 668, 673, 215 P. 2d 190; *In re Estate of Modlin,* 172 Kan. 428, 437, 241 P. 2d 692.)

Throughout the remainder of this opinion the plaintiff will be referred to as the appellant and the Fields and the Trust Company as the appellees.

Next it is contended the trial court erred in overruling appellant's demurrers to the evidence offered by the respective appellees. We are not disposed to labor this evidence. It suffices to say it includes testimony by Watts which, if believed, is (1) sufficient to establish all facts recited by the trial court in subdivisions 1, 2, 3, 4 and 5 of Instruction No. 9 as necessary and required to defeat appellant's right to possession under the theory of estoppel and is (2) also sufficient to establish the facts recited by such court in its Instruction No. 10 as necessary and required to establish the defense that appellant's mortgage had been paid by Watts and, therefore, it had no legal rights entitling it to possession of the involved automobile on the date of its sale and delivery to appellees Field.

As we understand it, appellant's position on the point now being considered is that under the undisputed evidence the purported bill of sale, obtained from Kansas United Auto Sales, Inc., through Watts, to Pauline V. Field failed to comply with the automobile registration laws of both Kansas and Missouri and that a certificate of title to the automobile in question could not be issued on the strength of her purported bill of sale; and that under the laws of

both Kansas (G. S. 1955 Supp., 8-135 [c] [6]) and Missouri (301.210 [4] V. A. M. S. 1949) sale of such motor vehicle, without the assignment of a certificate of title, was fraudulent and void. Based on these two points appellant claims that, notwithstanding the testimony of Watts, appellees are precluded as a matter of law from relying upon payment and estoppel as defenses to its cause of action. We believe there are several reasons why this contention lacks merit and cannot be upheld.

In the first place, our decisions hold that a plaintiff in a replevin action must recover, if at all, on the strength of his own title or right of possession and not on the weakness of his adversary's title or right of possession. (*Rauh v. Dumler*, 170 Kan. 698, 228 P. 2d 694.)

In the second, it has long been the rule of this jurisdiction that where a mortgagee knows the mortgagor is a dealer, buying to sell in regular course of business, and consents to a sale by the mortgagor, the purchaser takes free from the mortgagee's lien (*Emerson-Brantingham Implement Co. v. Faulkner*, 119 Kan. 807, 241 Pac. 431). It is true the foregoing case did not involve possessory rights to an automobile under a mortgage. However, it is to be noted, the rule therein announced has been recognized, approved and applied in numerous decisions where like rights with respect to automobiles were involved. See, *e. g., Universal Finance Corp. v. Schmid*, 177 Kan 414, 418, 280 P. 2d 577; *General Motors Acceptance Corp. v. Davis*, 169 Kan. 220, 222, 218 P. 2d 181; *Sorensen v. Pagenkopf*, 151 Kan 913, 916, 101 P. 2d 928; *Trapani v. Universal Credit Co.*, 151 Kan 715, 100 P. 2d 735. The fact appellant is an assignee of the chattel mortgage executed by Watts gives it no greater right than its assignor. (*Commercial Credit Corporation v. Kemp*, 176 Kan. 350, 353, 270 P. 2d 909.) Moreover, in this case Watts testified to a state of facts which would bring appellant squarely within the rule in question, even if it had been the original mortgagee.

Finally it may be stated the rule, so elementary as to require no citation of the authorities supporting it, is that where the debt secured by a mortgage on personal property has been paid the mortgagee no longer has any lawful claim to the property. It follows payment of the obligation for which such a mortgage is given is a legal defense in an action to recover possession of the property covered by the terms of that instrument.

Next it is urged the court erred in overruling appellant's motion for an instructed verdict. At that time there was evidence before the jury, although highly controverted, from which that body could properly find appellees had established the defenses of payment and estoppel to which we have heretofore given so much attention. Under such circumstances the trial court's action in overruling the motion for an instructed verdict was proper.

Heretofore we have pointed out that after returning the verdict appellant moved for judgment *non obstante veredicto.* The grounds of this motion are that the pleadings and the instructions show that the appellant is entitled to judgment. We find nothing in the pleadings or instructions warranting the sustaining of this motion on the grounds stated and what has been heretofore said and held compels the conclusion that it was properly overruled.

We now turn to errors assigned with respect to the overruling of the motion for a new trial. First it is urged the trial court should not have admitted and improperly overruled appellant's motion to strike from the record and withdraw from consideration of the jury a letter written by appellant to Watts sometime prior to the date of the transaction in question, wherein appellant acknowledged receipt of some $56,000.00 in full payment of floor plan notes, for the reason such letter did not tend to prove or disprove any issue in the case because the transaction on which appellant based its right to a lien occurred subsequent to the date of such letter. At the time of the admission of this letter Watts had testified to a course of dealing over the years in which appellant had permitted him to make sales, deliver cars and thereafter satisfy mortgages held by it. In addition he had testified in substance that appellant had consented to his sale of mortgaged automobiles and given him authority as the mortgagor to account later in large sums for the automobiles he had sold and on which it had existing liens. Under such circumstances we believe the letter was admissible as corroborating Watt's testimony with respect to the situation existing at the time of the sale of the automobile in question.

Other contentions made by appellant respecting the admission of evidence have been examined and found to be without merit under the existing facts and circumstances.

Next it is urged the trial court erroneously refused to give the jury instructions requested by appellant. Nothing would be gained by laboring arguments advanced on this point. It suffices to say

in a general way that such requested instructions were all predicated on premises, heretofore found to be fallacious, that regardless of the status of its own title or right of possession appellant was entitled to recover on the weakness of appellees' title or right of possession; and that since appellees had failed to comply with the automobile registration laws of either Kansas or Missouri they could not avail themselves of the defenses of either payment or estoppel against appellant.

Finally it is argued the trial court erred in giving Instructions Nos. 8, 9 and 10, heretofore quoted. The most that can be said for appellant's position with respect to these instructions is that they instruct on issues not raised by the pleadings and, hence, relate to matters which are not at issue in the case. Such questions were determined contrary to appellant's position earlier in this opinion. Hence, they require no further discussion.

In reaching the foregoing conclusions we have not failed to give consideration of *Motor v. Warren*, 113 Kan. 44, 213 Pac. 810, on which appellant places much weight, holding that the purchase of an automobile in total disregard of a statute governing the sale and transfer of such property is void and affords the purchaser no defense in a replevin action instituted by a plaintiff having a lawful claim to the property. We have no quarrel with that decision. The trouble from appellant's standpoint is that the rule therein announced applies only in cases where a plaintiff establishes a lawful claim to the property. Here, as has been pointed out, it has been determined that at the time of the commencement of the action appellant had no lawful claim to the automobile in question.

Neither have we overlooked other cases relied on by appellant, such as *Sims v. Sugg*, 165 Kan. 489, 196 P. 2d 191; *Farmer's & Merchants State Bank v. Hunter*, 166 Kan. 52, 199 P. 2d 196; *Bankers Investment Co. v. Meeker*, 166 Kan. 209, 201 P. 2d 117, and cases there cited. Appellant properly refers to statements therein contained to the effect the section of our statute (G. S. 1955 Supp., 8-135 [c] [6]) means just what it says and that failure to comply with its provisions in the sale of a motor vehicle renders the sale fraudulent and void. Quite true. Even so, a careful analysis of all those decisions discloses such statements were made with respect to the rights of plaintiffs who had a lawful claim to the motor vehicles involved at the time of the commencement of their actions. We know of and are cited to no decisions of this jurisdic-

tion holding that where—as here—it appears the plaintiff had no such lawful right he could recover possession of an automobile from a defendant who had bought, paid for and received possession of such vehicle under the facts and circumstances disclosed by this record. Moreover, we are neither required nor disposed to hold our statute contemplates any such result.

Having heretofore considered all salient questions raised by appellant and finding nothing in them or in arguments advanced in their support which warrants the granting of a new trial or reversal of the decision of the lower court its judgment must be and is affirmed.

It is so ordered.